[No. C059800. Third Dist. Nov. 9, 2009.]

GEORGE LOUIE, Plaintiff and Appellant, v.
BFS RETAIL AND COMMERCIAL OPERATIONS, LLC, Defendant and
Respondent.

## Counsel

Law Offices of Morse Mehrban, Morse Mehrban, Brian Keith Andrews and Dayton Magallenes for Plaintiff and Appellant.

Rutan & Tucker, Ernest W. Klatte III and Chris M. Heikaus Weaver for Defendant and Respondent.

## Opinion

**SIMS, Acting P. J.**—Plaintiff George Louie seeks damages against defendant BFS Retail and Commercial Operations, LLC (BFRC), for alleged violation of California's Disabled Persons Act (Civ. Code, § 54 et seq.[1]; DPA), because the countertops in BFRC's business establishments were allegedly too high to allow wheelchair users access. The trial court entered judgment of dismissal upon

---

[1] Undesignated statutory references are to the Civil Code.

Section 54 says, "Individuals with disabilities or medical conditions have the same right as [other members of] the general public to the full and free use of . . . public facilities, and other public places. [¶] . . . [¶] . . . A violation of the right of an individual under the [federal] Americans with Disabilities Act of 1990 (Public Law 101-336 also constitutes a violation of this section."

Section 54.1 says, "Individuals with disabilities shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities, . . . places of public accommodation . . . and other places to which the general public is invited, subject only to the conditions and limitations established by law, or state or federal regulation, and applicable alike to all persons. [¶] . . . [¶] (d) A violation of the right of an individual under the Americans with Disabilities Act of 1990 also constitutes a violation of this section, and nothing in this section shall be construed to limit the access of any person in violation of that act."

Section 54.3 says, "Any person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of an individual with a disability under Sections 54, 54.1 and 54.2 is liable for each offense for the actual damages and any amount as may be determined by a jury, or the court sitting without a jury, up to a maximum of three times the amount of actual damages but in no case less than one thousand dollars ($1,000), and attorney's fees as may be determined by the court in addition thereto, suffered by any person denied any of the rights provided in Sections 54, 54.1, and 54.2. . . . [¶] . . . The remedies in this section are nonexclusive and are in addition to any other remedy provided by law [except damages cannot be imposed under both the DPA and section 52 of the Unruh Civil Rights Act], including, but not limited to, any action for injunctive or other equitable relief available to the aggrieved party or brought in the name of the people of this state or of the United States."

BFRC's demurrer, concluding res judicata barred this lawsuit based on a consent decree in a class action lawsuit against BFRC in the United States District Court in Florida, which alleged BFRC's facilities denied equal access to disabled persons in violation of the federal Amercians with Disabilities Act of 1990 (ADA) (42 U.S.C. § 12101 et seq.). We shall conclude that, because the Florida federal case was resolved by a consent decree expressly reserving any damage claims, res judicata does not bar this claim for damages. We shall therefore reverse the judgment of dismissal.[2]

## BACKGROUND

The pleading at issue in this appeal is plaintiff's "FIRST AMENDED COMPLAINT FOR DAMAGES," filed May 12, 2008, which asserted one cause of action for violation of sections 54 and 54.1 (fn. 1, *ante*). According to the allegations (which we accept as true for purposes of reviewing the ruling on demurrer):

BFRC owns and operates tire and automotive retail and service centers at seven specified addresses in Sacramento, Carmichael, North Highlands, Citrus Heights, Rancho Cordova, and Roseville. Plaintiff, who resides in West Sacramento, is an amputee who has required the use of a wheelchair as his primary means of mobility outside of his home. In the year preceding the filing of this action, plaintiff patronized defendant's facilities at least 17 times. "During said visits to the facilities while using his wheelchair, Plaintiff was unable to use [BFRC's] service counters because their countertops were too high for him to be of any use and were therefore inaccessible to him and any person who is wheelchair-bound." Providing wheelchair-accessible counters would have been easy and inexpensive.

The "PRAYER" of the complaint asked for "damages, attorney fees and costs, and all other relief that the Court may deem proper."

BFRC demurred on the ground the lawsuit was barred by res judicata pursuant to a prior class action lawsuit against BFRC in the United States

---

[2] We recognize the distinction between res judicata (claim preclusion), which precludes relitigation of the same cause of action, and collateral estoppel (issue preclusion), which bars relitigation of issues. (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896–897 [123 Cal.Rptr.2d 432, 51 P.3d 297].) Here, although this lawsuit asserted a cause of action under a state statute, and the federal judgment involved a claim under a federal statute, BFRC invoked and the trial court ruled on the ground of res judicata.

The California Supreme Court recently held that a federal court judgment in favor of the defendants in a civil rights action (42 U.S.C. § 1983) arising from police shooting a fleeing suspect, collaterally estopped the plaintiffs from pursuing a wrongful death claim in state court, even on a theory that the defendants' preshooting conduct was negligent. (*Hernandez v. City of Pomona* (2009) 46 Cal.4th 501 [94 Cal.Rptr.3d 1, 207 P.3d 506].) *Hernandez* has no bearing on the case before us.

District Court in Florida, which resulted in a final judgment and consent decree covering BFRC's stores nationwide, including California. BFRC requested and was granted judicial notice of court documents in the federal case—*American Disability Association, Inc. v. BFS Retail and Commercial Operations, LLC* (S.D.Fla., Oct. 30, 2002, No. 01-6529). Although the federal complaint was not part of our record on appeal, we have obtained the federal complaint and (after having given notice to the parties) we now take judicial notice of it.

Plaintiff here asserts (without evidence at this demurrer stage) that he was not given notice of the federal case. For purposes of this appeal, it does not matter whether or not plaintiff was aware of the federal case while it was pending.

Among the documents of which the trial court took judicial notice is a "JOINT MOTION FOR ORDER GRANTING PRELIMINARY APPROVAL OF PROPOSED CONSENT DECREE; FOR CONDITIONALLY CERTIFYING THE SETTLEMENT CLASS; FOR DIRECTING NOTICE TO THE CLASS; AND FOR SCHEDULING FAIRNESS HEARING WITH SUPPORTING MEMORANDUM OF LAW." The joint motion, signed by BFRC's attorney, repeatedly said the consent decree would not release any claim for damages. Thus, in summarizing the proposed settlement, the joint motion said, "The release, by the defined settlement class shall include a release of all claims asserted in the lawsuit, past and/or present, and all causes of action, actions, complaints or liabilities of every kind *for injunctive relief, declaratory relief and attorneys' fees*, whether based on Title III of the ADA or state or local law, rule or regulation. *The release does not include claims for individual damages, that otherwise might be available under state law or local ordinance.*" (Italics added.) Additionally, the joint motion, in arguing that the proposed form of notice to absent class members was adequate due to impracticability of individual notice, said: "There are no individual damage claims affected by this settlement."

The proposed form of notice included: (1) posting notice in BFRC stores; (2) publication in a national newspaper, USA Today; (3) mailing notice to prominent disability rights groups (including two in California—one in Los Angeles and one in Berkeley); (4) attempting to post notice on at least five Internet locations frequented by the disabled; and (5) via notice, directing inquiries to the Web site of plaintiff's counsel. The notice to disability rights groups said the proposed consent decree "will ensure that BFRC Stores are accessible to persons with disabilities as required by the ADA and local accessibility laws." The notice also said, "all Class members will be bound by [the consent decree's] provisions" if the court gave final approval, and anyone who objected to the settlement, a copy of which was available on a Web site, had to send a written statement of reasons for objecting.

The Florida federal court's October 30, 2002, "FINAL JUDGMENT APPROVING CLASS CERTIFICATION AND PROPOSED AMENDED CONSENT DECREE AND DISMISSING ACTION WITH PREJUDICE" expressly stated that the proposed form of notice sufficed because no damages were sought and the court was certifying the class under Federal Rules of Civil Procedure, rule 23(b)(2) (28 U.S.C.) (undesignated rule references are to the Federal Rules of Civil Procedure), which allows a class action without notice to class members if prerequisites are satisfied *and* "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . . ." The federal court said, "The Proposed Amended Consent Decree meets [rule 23](b)(2)'s strictures because the relief sought in this action is purely injunctive and declaratory. . . . [P]laintiff and plaintiff class are seeking purely injunctive relief to remedy BFRC's alleged non-compliance with Title III which is a federal civil rights statute." The federal court judgment stated in a footnote: "The Proposed Amended Consent Decree reflects the deletion of damage claims that the parties voluntarily excised from the Proposed Consent Decree in August, 2002, after discussions with all of the then objectors." The federal court observed the only objections came from a group of agencies that complained about the use of tolerances for new construction and alterations.

The federal court in Florida, after finding the settlement fair and reasonable, ordered and adjudged that the settlement class was certified, the proposed consent decree was approved and adopted as the order of the court, and the federal court retained jurisdiction pursuant to the terms of the consent decree for enforcement purposes and determination of fees and costs.

The consent decree approved by the federal court limited itself to injunctive relief, declaratory relief, and attorney fees, stating:

"23. RELEASES

"23.1 Release and Discharge. Effective on the date of Final Approval, Plaintiff, on behalf of itself and all members of the Settlement Class, and their spouses or partners, executors, representatives, heirs, successors and assigns, in consideration of the relief set forth herein, the sufficiency of which is expressly acknowledged, fully and finally releases and forever discharges BFRC and the Independent Dealers covered by this Decree and each of their respective [agents, etc.]. Nothing herein limits the enforcement of Settlement Class members' rights through administrative or law enforcement agencies.

"23.2 Released Claims. The Released Claims are all claims asserted by named Plaintiff and/or the Settlement Class in the lawsuit or which could be

asserted by them during the Term of this Decree,[3] any and all past and/or present claims, rights, demands, charges, complaints, actions, causes of action, obligations, or liabilities of any and every kind, known or unknown, *for injunctive or declaratory relief or attorneys' fees*, based upon Title III of the ADA and its promulgated rules and regulations relating to or concerning access for persons with Mobility Disabilities and dexterity disabilities at the BFRC Retail Tire and Service Stores covered by this Decree.[4] Released Claims also include claims regarding Accessibility Enhancements and the elements of BFRC Retail Tire and Service Stores affected thereby that arise during the term of this Decree. *To the extent permitted by law, the final entry of this Decree will be fully binding and effective for purposes of res judicata and collateral estoppel upon BFRC, Plaintiff and the Settlement Class with respect to Title III of the ADA and its promulgated rules and regulations concerning access for persons with Mobility disabilities and dexterity disabilities covered by Title III of the ADA at BFRC Retail Tire and Service Stores.* Nothing in this section, however, will prevent Class Counsel from enforcing this Decree." (Italics added.)

In further support of the demurrer in the current case, BFRC requested and was granted judicial notice of documents reflecting plaintiff first tried to litigate this case in federal court in California, without success. Thus, on October 31, 2007, plaintiff filed a complaint in the Eastern District of California—*Louie v. BFS Retail & Commer. Operations, L.L.C.* (E.D.Cal., Feb. 28, 2008, No. CIV S-07-2340 WBS KJM) 2008 U.S.Dist. Lexis 22617 (*Louie*)—seeking to prosecute as a class action a complaint for damages and injunctive relief against BFRC for alleged failure to provide full and equal access to individuals with disabilities in violation of the ADA, the Unruh Civil Rights Act (§ 51) and the DPA (§§ 54–55). On February 28, 2008, the Eastern District of California dismissed *the ADA claim* with prejudice, on the ground of res judicata in that it was barred by the federal court case in Florida. The Eastern District observed, "plaintiff appropriately acknowledges his membership in the aforementioned 'settlement class' [fn. omitted] and thus concedes that the Consent Decree bars his ADA claim. (*See* Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss ('Plaintiff [] concedes that his claim for violation of the [ADA] is subsumed into the class action consent judgment to which Defendant [] refers in its motion to dismiss.').)" (*Louie, supra,* 2008 U.S.Dist. Lexis 22617 at p. *6.) With the sole federal claim dismissed, the Eastern District declined to exercise supplemental jurisdiction over *the state law claims.* Accordingly, the Eastern District dismissed *without prejudice* plaintiff's state law claims.

---

[3] "Term of this Decree" means five years from the date of final approval (i.e., final, postfairness hearing approval by a district judge), unless otherwise specified in the decree.

[4] Plaintiff does not claim the stores at issue in his case are outside the scope of the federal consent decree.

Plaintiff then filed the current complaint in state court, limited to one count seeking damages for alleged violation of the DPA.

In state court, plaintiff opposed the demurrer.

The trial court sustained the demurrer without leave to amend, on the ground of res judicata. The court observed plaintiff conceded in federal court in California that his ADA claim was barred because he was a member of the class in Florida. The court said sections 54 and 54.1, part of the DPA (fn. 1, *ante*) "integrate the ADA and Section 54(c) provides a violation of the ADA is also a violation of 54.1. Thus plaintiff's claims here are barred by the res judicata effect of the Consent Decree and final judgment of the Florida federal district court on the ADA claims." In response to plaintiff's argument that res judicata was inapplicable because the Florida case was limited to injunctive/declaratory relief, whereas plaintiff now seeks statutory damages, the trial court said, "Plaintiff confuses rights and remedies and misapplies the primary rights doctrine. Where two actions involve the same harm to the plaintiff and the same wrong by the defendant, the same primary right is at stake. Thus res judicata bars the later action[.] *Eichman v. Fotomat Corp.* (1983) 147 Cal.App.3d 1170, 1175 [197 Cal.Rptr. 612]. [¶] The primary right here is plaintiff's right to full and equal access to defendant's public accommodations. Plaintiff mistakenly focuses on the remedy when the focus properly belongs on the right. The fact that a second action may seek different remedies or is based on a different theory is not determinative. It is the 'right or obligation sought to be established or enforced, not the remedy or relief sought which determines the nature and substance of the cause of action. [Citations.]"

The court continued, "Plaintiff also argues that he was not part of the settlement class, was not adequately represented, and was not provided with adequate notice. [¶] He is clearly a member of the class and it is not necessary that he be named individually. [Citation.] The Consent Decree provides that it will be fully binding upon BFRC and the settlement class. The settlement class includes those persons with 'mobility disabilities.' Plaintiff has alleged he is in a wheel chair. . . . [¶] Notice was given by several means and the Florida Court specifically found that it exceeded due process requirements. The Florida court held two Fairness Hearings and considered objections submitted by interested parties." The state court added that plaintiff had not offered any amendment that could avoid dismissal.

Plaintiff appeals from the ensuing judgment of dismissal by the California state court.

## DISCUSSION

### I. *Standard of Review*

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, . . . . [t]he reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. [Citations.]' [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.]" (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966–967 [9 Cal.Rptr.2d 92, 831 P.2d 317].) In reviewing the sufficiency of a complaint against a demurrer, we also consider matters which may be judicially noticed. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

Additionally, dismissal on res judicata grounds presents a question of law, which we review de novo. (*Noble v. Draper* (2008) 160 Cal.App.4th 1, 10 [73 Cal.Rptr.3d 3].)

### II. *Res Judicata Does Not Bar This Action*

The parties devote much of their appellate briefs to arguing about primary right theory, privity, and due process notice to absent class members. BFRC in its respondent's brief focuses on the rule that the primary right, rather than the remedy, determines res judicata effect. However, we need not address all these points because, as we shall explain, the resolution of this appeal turns on the circumstance that the federal case in Florida ended with a consent decree in which BFRC agreed to reserve any damage claims for later litigation. This circumstance renders res judicata inapplicable to the damage claims now asserted under California's DPA.

■ The United States Supreme Court has recognized that, "State courts are generally free to develop their own rules for protecting against . . . the piecemeal resolution of disputes," as long as they do not interfere with fundamental federal rights. (*Richards v. Jefferson County* (1996) 517 U.S. 793, 797 [135 L.Ed.2d 76, 116 S.Ct. 1761].) However, where a prior federal judgment was based on *federal question* jurisdiction, the preclusive effect of the prior judgment of a federal court is determined by federal law. (*Limbach v. Hooven & Allison Co.* (1984) 466 U.S. 353, 361–362 [80 L.Ed.2d 356, 104 S.Ct. 1837]; *Butcher v. Truck Ins. Exchange* (2000) 77 Cal.App.4th 1442, 1452 [92 Cal.Rptr.2d 521].) Where a prior federal judgment was based on

*diversity* jurisdiction, the preclusive effect is subject to federal common law—meaning the law of the state in which the federal court sits—if the state law is compatible with federal interests. (*Semtek Int'l Inc. v. Lockheed Martin Corp.* (2001) 531 U.S. 497, 509 [149 L.Ed.2d 32, 121 S.Ct. 1021]; *Burdette v. Carrier Corp.* (2008) 158 Cal.App.4th 1668, 1674 [71 Cal.Rptr.3d 185].) Federal question jurisdiction is pursuant to title 28 United States Code section 1331, which provides that district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. Diversity jurisdiction under title 28 United States Code section 1332, gives district courts original jurisdiction of civil actions where the matter in controversy exceeds $75,000 and is between citizens of different states.

Here, the complaint from the federal case in Florida was not part of the record on appeal, and the record did not disclose the basis of jurisdiction for the complaint filed in Florida. On our own motion, we have obtained and, with appropriate notice to the parties, take judicial notice of the complaint filed in the United States District Court, Southern District of Florida— *American Disability Association, Inc. v. BFS Retail and Commercial Operations, LLC, supra,* No. 01-6529. (Evid. Code, §§ 452, 459.) That federal complaint was based on federal question jurisdiction (28 U.S.C. § 1331), not diversity jurisdiction (28 U.S.C. § 1332).

Thus, we look to the preclusive effect under federal law, though we observe federal law is consistent with California law in this case.[5]

 Under federal and California law, res judicata generally precludes parties or their privies from litigating in a second lawsuit issues that were or could have been litigated in a prior suit. (*Rivet v. Regions Bank of La.* (1998) 522 U.S. 470, 476 [139 L.Ed.2d 912, 118 S.Ct. 921] [case brought in Louisiana state court was improperly removed to federal court, where basis for removal was defendants' assertion that action was precluded by prior federal court orders]; *Mycogen Corp. v. Monsanto Co., supra,* 28 Cal.4th 888, 896–897, 904.)

---

[5] In response to our invitation for supplemental briefing, plaintiff declined, and defendant submitted a brief arguing there is conflicting case law on the question of whether we apply federal law in determining the preclusive effect of the federal court judgment. (E.g., *Balasubramanian v. San Diego Community College Dist.* (2000) 80 Cal.App.4th 977, 991 [95 Cal.Rptr.2d 837], criticized on other grounds in *Stryker v. Antelope Valley Community College Dist.* (2002) 100 Cal.App.4th 324, 329–337 [122 Cal.Rptr.2d 489].) Defendant nevertheless says it is not necessary for this court to address the "apparent inconsistencies," because the result in this case is the same regardless of whether California or federal law applies. We agree the result is the same. Defendant explains its view that California and federal law yield a result in defendant's favor. However, defendant's analysis ignores the salient and determinative point that in Florida it agreed to, and the federal court in Florida approved, a reservation of damage claims.

"Under both California and federal law, res judicata bars a subsequent suit if the same cause of action has been previously adjudicated in a suit between the same parties. (*Montana* v. *United States* (1979) 440 U.S. 147, 153 [59 L.Ed.2d 210, 216–217, 99 S.Ct. 970].) It is also settled . . . that a court-approved settlement pursuant to a final consent decree in a class action will operate to bar subsequent suits by class members. [Citations.] . . . 'A judgment entered . . . by consent or stipulation, is as conclusive a . . . bar as a judgment rendered after trial.' [Citations.]" (*Johnson v. American Airlines, Inc.* (1984) 157 Cal.App.3d 427, 431 [203 Cal.Rptr. 638] (*Johnson*), citing, inter alia, *Dosier v. Miami Valley Broadcasting Corp.* (9th Cir. 1981) 656 F.2d 1295, 1298.)

■ A consent decree is a "court decree that all parties agree to." (Black's Law Dict. (8th ed. 2004) p. 441.) Federal law recognizes that an attorney has power to bind his or her client. (*Stone v. Bank of Commerce* (1899) 174 U.S. 412, 422 [43 L.Ed. 1028, 19 S.Ct. 747].) California recognizes that a consent decree entered by consent of an attorney is binding upon the client. (*Holmes v. Rogers* (1859) 13 Cal. 191, 200.) Thus, the Florida consent decree entered by consent of BFRC's attorney binds BFRC, and BFRC does not argue to the contrary.

■ Under federal and California law, a judgment in a class action is binding on class members in any subsequent litigation, though the ability to bind absent class members depends on compliance with due process regarding notice and adequate representation. (*Richards v. Jefferson County, supra*, 517 U.S. at pp. 798–801 [135 L.Ed.2d 76] [Alabama state court violated due process by concluding challengers to county tax were bound, under state law as to res judicata, by prior adjudication to which challengers had not been parties]; *Cooper v. Federal Reserve Bank of Richmond* (1984) 467 U.S. 867, 874 [81 L.Ed.2d 718, 104 S.Ct. 2794]; *Johnson, supra*, 157 Cal.App.3d at p. 431; 5 Newberg on Class Actions (4th ed. 2002) § 16:21, pp. 230, 235; see also *Consumer Advocacy Group, Inc. v. ExxonMobil Corp.* (2008) 168 Cal.App.4th 675, 689–693 [86 Cal.Rptr.3d 39] [discussing privity in context of plaintiffs purporting to act as enforcers of the public interest].)

■ Where a federal court, in a case brought under the ADA and state disability laws, does not resolve any issue of the state disability laws, the federal courts will dismiss the state claims without prejudice to their being filed in state court, even where the state disability statutes incorporate the ADA. Thus, in *Wander v. Kaus* (9th Cir. 2002) 304 F.3d 856 (*Wander*), a plaintiff filed a lawsuit in federal court, alleging the defendants' structural barriers discriminated against the disabled in violation of title III of the ADA and the California DPA. (*Wander*, at p. 857.) The DPA claim was premised on the ADA violation. The plaintiff sought injunctive relief under the ADA

and damages under the DPA. Damages are not available to a private plaintiff suing under the ADA; the remedy is limited to injunctive relief. (42 U.S.C. § 12188(a)(1) [remedies available to private plaintiff, under ADA subchapter regarding public accommodations and services operated by private entities, are remedies set forth in 42 U.S.C. § 2000a-3(a), civil rights statute authorizing civil action for injunctive relief]; *Wander, supra,* 304 F.3d at p. 858; *Org. for Advancement of Minorities v. Brick Oven Restaurant* (S.D.Cal. 2005) 406 F.Supp.2d 1120, 1129.) The ADA states it does not limit remedies available under state law. (42 U.S.C. § 12201(b).)

■ In *Wander*, the defendants' transfer of the property to new owners rendered moot the ADA claim for injunctive relief, leaving only the DPA claim for damages. The defendants moved to dismiss the ADA claim as moot and to dismiss the state law claim without prejudice under the discretionary supplemental jurisdiction statute, title 28 United States Code section 1367(c), which provides that district courts may decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it has original jurisdiction. The federal district court granted the motion. The plaintiff appealed, challenging the district court's ruling that the mere fact that a previous violation of federal law would also give rise to a state law claim was inadequate to vest the district court with federal question jurisdiction over the state law claim. (*Wander, supra,* 304 F.3d at p. 858.) The Ninth Circuit affirmed, holding "there is no federal-question jurisdiction over a lawsuit for damages brought under California's [DPA], even though the California statute makes a violation of the federal [ADA] a violation of state law. Congress intended that there be no federal cause of action for damages for a violation of Title III of the ADA. To exercise federal-question jurisdiction in these circumstances would circumvent the intent of Congress. Federal-question jurisdiction is not created merely because a violation of federal law is an element of a state law claim." (*Id.* at p. 857.)

As observed in *Wander*, the same conclusion was reached in other cases, e.g., *Pickern v. Best W. Timber Cove Lodge Marina Resort* (E.D.Cal. 2002) 194 F.Supp.2d 1128, which dismissed the state law claims despite recognizing that litigation of a new suit in state court may create some inconvenience to the plaintiff. (*Id.* at p. 1133.)

In most cases, when federal and state law claims are joined in a federal court action and the federal claims are dismissed, the pendent state claims are dismissed *without prejudice* to filing them in state court, in order to avoid "[n]eedless decisions of state law . . . as a matter of comity and to promote justice between the parties." (*Mine Workers v. Gibbs* (1966) 383 U.S. 715, 726 [16 L.Ed.2d 218, 86 S.Ct. 1130], limited and criticized on other grounds, e.g., *DaimlerChrysler Corp. v. Cuno* (2006) 547 U.S. 332 [164 L.Ed.2d 589, 126 S.Ct. 1854]; *Schneider v. TRW, Inc.* (9th Cir. 1991) 938 F.2d 986, 993.)

Additionally, we observe the commonsense statement in a plurality opinion of the United States Supreme Court (with no dissent on this point), with no apparent need for citation of authority, agreeing with the court of appeals that res judicata did not bar claims in a federal district court in Georgia based on a prior judgment of a South Carolina district court, because the federal court in South Carolina expressly left open the option for the claims to be pursued at a later time. (*United States v. Seckinger* (1970) 397 U.S. 203, 206, fn. 6 [25 L.Ed.2d 224, 90 S.Ct. 880].) *Seckinger* was cited for this point in *Superior Motels, Inc. v. Rinn Motor Hotels, Inc.* (1987) 195 Cal.App.3d 1032, 1058 [241 Cal.Rptr. 487] (special master's findings made in determining whether to lift stay on state court proceedings after appointment of federal receiver were not entitled to preclusive effect in state unlawful detainer action) and *U.S. v. Burns* (W.D.Pa. 1981) 512 F.Supp. 916, 921 (in disposing of lawsuit, court may reserve right of party to bring second suit arising from same subject matter), questioned on other grounds in *U.S. v. Vineland Chem. Co.* (D.N.J. 1988) 692 F.Supp. 415, 420.

Here, the federal court was not required to decide whether to dismiss the state law claims, because those claims were reserved by the consent of the parties (reserving any issue of damages). Indeed, the consent decree's "INTRODUCTION" described the "Lawsuit" without any reference whatsoever to state law. It mentioned only the ADA.

There was express language in the Florida judgment reserving any issue of damages, and indeed the federal court in Florida relied upon this reservation to lessen the standard for notice to class members. Thus, the federal court's October 30, 2002, "FINAL JUDGMENT APPROVING CLASS CERTIFICATION AND PROPOSED AMENDED CONSENT DECREE AND DISMISSING ACTION WITH PREJUDICE" stated in a footnote: "The Proposed Amended Consent Decree reflects the deletion of damage claims that the parties voluntarily excised from the Proposed Consent Decree in August, 2002, after discussions with all of the then objectors." The judgment further stated that since the issue of damages had been voluntarily excised and the case was limited to injunctive/declaratory relief, the court was certifying the class under rule 23(b)(2), which allows a class action to proceed if prerequisites are satisfied and "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . . ." The federal court said, "The Proposed Amended Consent Decree meets [rule 23](b)(2)'s strictures because the relief sought in this action is

purely injunctive and declaratory.[6] . . . [P]laintiff and plaintiff class are seeking purely injunctive relief to remedy BFRC's alleged non-compliance with Title III which is a federal civil rights statute."

The federal court in Florida went on to say that, while rule 23(b)(2) class actions do not require notice to absent class members, the parties suggested various forms of notice (publishing notice in USA Today, posting the proposed consent decree on the attorney's Web site, posting notice at each of BFRC's store locations, and sending notice to disability organizations). The federal court concluded that, since the case was a rule 23(b)(2) case, these forms of notice exceeded the requirements of due process. The federal court cited *Eisen v. Carlisle & Jacquelin* (1974) 417 U.S. 156 [40 L.Ed.2d 732, 94 S.Ct. 2140], which required, in a case that was *not* limited to injunctive relief, reasonable effort to give individual notice to each identifiable class member. (*Id.* at p. 176, criticized on other grounds in, e.g., *In re Seagate Tech. II Sec. Litig.* (N.D.Cal. 1994) 843 F.Supp. 1341.) We note new federal legislation was enacted in 2005—the Class Action Fairness Act of 2005 (28 U.S.C. § 1711 et seq.)—but we need not address it, because it was enacted after the Florida federal judgment was entered, and no party raises it in this appeal.

The proposed consent decree prepared by the parties and approved by the federal court did not expressly state the withdrawal of damages issues, but it did expressly state the claims being released by the decree were claims for injunctive or declaratory relief or attorney fees, i.e., "all claims asserted by named Plaintiff and/or the Settlement Class in the lawsuit or which could be asserted by them during the Term of this Decree, any and all past and/or present claims, rights, demands, charges, complaints, actions, causes of action, obligations, or liabilities of any and every kind, known or unknown, *for injunctive or declaratory relief or attorneys' fees, based upon Title III of the ADA and its promulgated rules and regulations* relating to or concerning access for persons with Mobility Disabilities and dexterity disabilities at the BFRC Retail Tire and Service Stores covered by this Decree." (Italics added.)

■ Under these facts, we conclude federal law does not preclude litigation of the state law claims in state court.

Our conclusion that res judicata is inapplicable is consistent with the opinion of the federal court in California in this case, which dismissed plaintiff's ADA claim *with prejudice* on the ground of res judicata, but—after

---

[6] Incidental damages will not necessarily prevent a case from proceeding under rule 23(b)(2). (E.g., *Molski v. Gleich* (9th Cir. 2003) 318 F.3d 937, 949–951.) For our purposes, however, this point does not matter, because all damage claims were withdrawn from the federal case in Florida.

ruling the state law claim did not present a federal question—declined to exercise supplemental jurisdiction and dismissed plaintiff's state law claim *without prejudice*, despite acknowledging that litigation of a new suit in state court "may somewhat inconvenience the parties."

■ Our conclusion that res judicata does not bar this lawsuit is also consistent with California law. Thus, as stated in *Ellena v. State of California* (1977) 69 Cal.App.3d 245 [138 Cal.Rptr. 110] (*Ellena*): "Although a stipulated judgment is no less conclusive than a judgment entered after trial and contest [citations] it is axiomatic that its res judicata effect extends only to those issues embraced within the consent judgment. [Citations.] Thus, while a stipulated judgment normally concludes all matters put into issue by the pleadings, the parties can agree to restrict its scope by expressly withdrawing an issue from the consent judgment. [Citations.] As cogently stated in *Miller & Lux, Inc.* v. *James* [(1919) 180 Cal. 38] at page 44 [179 P. 174]: 'The rule of res adjudicata is to prevent vexatious litigation and to require the parties to rest upon one decision in their controversy, but where they expressly agreed to withdraw an issue from the court, the reason for the rule ceases. The issue is not in fact adjudged, and the parties themselves having consented to that method of trial are not entitled to invoke the rule which requires parties to submit their whole case to the court. If they consent to adjudicate their differences piecemeal, there is no reason that the court should extend the rules of law to prevent that which they had expressly agreed might be done.' " (*Ellena, supra,* 69 Cal.App.3d at pp. 260–261, italics omitted.) *Ellena* added, "The exception to the normal res judicata effect of a judgment, as articulated in *Miller & Lux, Inc.* v. *James, supra,* 180 Cal. 38, requires that an otherwise included issue be withdrawn by an express reservation." (*Ellena, supra,* 69 Cal.App.3d at p. 261.)

*Miller & Lux, Inc.* v. *James, supra,* 180 Cal. 38, held that a stipulation in a prior case, that no evidence be offered to prove an appropriation of water greater than a stated number of cubic feet, and that the court need not make any finding as to any appropriation other than the said number of cubic feet, amounted to a withdrawal of the issue of other appropriations from the consideration of the court, and thus the court decision in the first case was not res judicata as to the issue withdrawn. (*Id.* at pp. 44–46.)

In *Ellena, supra,* 69 Cal.App.3d 245, there was no express reservation withdrawing the issue of severance damages from the eminent domain action, and the appellate court rejected an argument that the parties intended ambiguous language to withdraw the issue. Therefore, *Ellena* held res judicata did bar the subsequent action. (*Ibid.*)

Here, in contrast, we have seen there was express language in the stipulated judgment withdrawing any issue of damages, and indeed the federal court in Florida relied upon this reservation to lessen the standard for notice to class members.

We recognize the consent decree in Florida expressed a general intent that res judicata apply, by stating, "To the extent permitted by law, the final entry of this Decree will be fully binding and effective for purposes of res judicata and collateral estoppel upon BFRC, Plaintiff and the Settlement Class with respect to Title III of the ADA and its promulgated rules and regulations concerning access for persons with Mobility disabilities and dexterity disabilities covered by Title III of the ADA at BFRC Retail Tire and Service Stores." However, this statement merely bars future ADA claims, and nothing in this statement calls for application of res judicata to state law damage claims, even if the state law damage claim turns on an ADA violation. Thus, BFRC's citation of language in the consent decree—that the settlement was intended to "avoid the uncertainties and costs of further or future litigation"—can easily be explained as an intent to avoid further or future litigation of federal ADA claims.

We also recognize the consent decree said one of its purposes was to achieve improvements in a manner that satisfied BFRC's obligations under the ADA "and ADA-Related Laws," and compliance with the decree would constitute "full satisfaction of the claims of the Plaintiff, Class Counsel and Settlement Class relating to accessibility issues and compliance with Title III of the ADA or regulations promulgated thereunder." (Underscoring omitted.) However, nothing in these statements disposed of the damage claims, i.e., the state law claims.

■ Even assuming for the sake of argument that the federal court in Florida meant for the consent judgment to bar any state law damage claims, the federal court's conclusion would not be binding on us, because the federal court conducting the class action " ' "cannot predetermine the res judicata effect of the judgment, this [effect] can be tested only in a subsequent action." ' " (*Hypertouch, Inc. v. Superior Court* (2005) 128 Cal.App.4th 1527, 1542–1543 [27 Cal.Rptr.3d 839], italics omitted, quoting *Cartt v. Superior Court* (1975) 50 Cal.App.3d 960, 968, fn. 12 [124 Cal.Rptr. 376] [discussing rule 23 class actions]; see also 5 Newberg on Class Actions, *supra*, § 16:25, p. 264.)

BFRC argues that, because California's DPA explicitly integrates the ADA (see §§ 54, 54.1, set forth in fn. 1, *ante*), the federal decree against future ADA claims

also bars future DPA claims. We disagree, because the federal court documents clearly withdrew any damage claims, and the integration of the ADA into the DPA did not render the DPA claim a federal question. (*Wander, supra*, 304 F.3d 856.)

BFRC argues that constitutional principles of federalism require us to give full effect to the federal court judgment. However, we are giving full effect to the federal court judgment. It is the federal court judgment which expressly withdraws damage claims from its scope.

Even assuming for the sake of argument that the consent decree could be considered ambiguous, any ambiguity would be resolved against BFRC because, in the Florida case, the "JOINT MOTION FOR ORDER GRANTING PRELIMINARY APPROVAL OF PROPOSED CONSENT DECREE; FOR CONDITIONALLY CERTIFYING THE SETTLEMENT CLASS; FOR DIRECTING NOTICE TO THE CLASS; AND FOR SCHEDULING FAIRNESS HEARING WITH SUPPORTING MEMORANDUM OF LAW" repeatedly said the consent decree would not release any claim for damages. Thus, in summarizing the proposed settlement, the joint motion—signed by BFRC's attorney—said, "The release, by the defined settlement class shall include a release of all claims asserted in the lawsuit, past and/or present, and all causes of action, actions, complaints or liabilities of every kind for injunctive relief, declaratory relief and attorneys' fees, whether based on Title III of the ADA or state or local law, rule or regulation. *The release does not include claims for individual damages, that otherwise might be available under state law or local ordinance.*" (Italics added.) In arguing that notice to class members by publication was adequate due to impracticability of individual notice, the joint motion said, "There are no individual damage claims affected by this settlement."

The parties cite *Molski v. Gleich, supra*, 318 F.3d 937, which did not involve res judicata but rather a direct appeal from a class certification in a federal lawsuit brought under the ADA and California disability laws. There, a consent decree was entered which released claims for " 'injunctive relief, declaratory relief, attorney fees, or damages based upon [the ADA] and/or California Disability Law Claims' " except " '[t]he released claims [did] not include personal injury claims involving physical injury to a plaintiff.' " (318 F.3d at pp. 945–946, italics omitted.) The Ninth Circuit reversed the judgment, in part because the notice to absent class members inadequately stated that the decree did not affect rights with respect to "personal injury." The notice failed to explain that only claims involving literally physical injuries were reserved. (*Id.* at p. 952.) Also, due process required that absent class members be given an opportunity to opt out of the class because statutory treble damages could be substantial. (*Ibid.*) BFRC asserts

that plaintiff in this case has no damages other than the statutory maximum of $1,000 under section 54.3, which is unsubstantial and incidental to the injunctive relief sought in the Florida action. However, at this demurrer stage, all we know is that plaintiff's complaint prays for damages. Section 54.3 authorizes damages for each violation, and plaintiff alleges 17 visits to BFRC's stores. In any event, it does not matter whether plaintiff's damages are considered substantial or incidental, because the federal court consent judgment withdrew *all* damage claims from the federal lawsuit.

BFRC argues reversal of the judgment of dismissal would cause significant hardship to BFRC, because plaintiff and any other class member will be able to sue BFRC for damages, even if BFRC has complied with every aspect of the federal consent decree. However, that is the bargain BFRC struck by agreeing to a consent decree that reserved damage claims. Even assuming the concession was a practical necessity (because damage claims may have rendered the federal lawsuit unsuitable for class action), BFRC cannot now claim hardship.

To the contrary, it would be unjust to allow BFRC to invoke res judicata to bar damage claims, after having agreed to reserve the damage claims. *Johnson, supra,* 157 Cal.App.3d at page 433, said application of res judicata would not result in any " 'manifest injustice,' " assuming the continuing viability of this equitable and discretionary exception to res judicata described in *Greenfield v. Mather* (1948) 32 Cal.2d 23, 35 [194 P.2d 1], and criticized in *Slater v. Blackwood* (1975) 15 Cal.3d 791, 796 [126 Cal.Rptr. 225, 543 P.2d 593]. Of course, even assuming continuing viability of the manifest injustice exception to res judicata, that exception assumes a basis for application of res judicata exists in the first place. (*Schultz v. Harney* (1994) 27 Cal.App.4th 1611, 1619, fn. 6 [33 Cal.Rptr.2d 276].) Here, we have concluded res judicata does not apply in the first place. Nevertheless, assuming for the sake of argument that a basis for res judicata exists, and further assuming the continuing viability of the manifest injustice exception, we would conclude that application of res judicata would be manifestly unjust in this case due to BFRC's agreement in the federal lawsuit to reserve damage claims, and the fact that the agreement to withdraw damage claims resulted in the federal court approving a relaxed fashion of notice to absent class members. (*Eisen v. Carlisle & Jacquelin, supra,* 417 U.S. at p. 176 [individual notice to identifiable class members was required in action that sought damages].)

We conclude res judicata does not bar this lawsuit, and the judgment of dismissal must be reversed.

## DISPOSITION

The judgment is reversed. Plaintiff shall recover his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1)–(2).)

Nicholson, J., and Butz, J., concurred.